UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jerod J. Cook, ) | C/A No.  5:12-cv-2608-RMG-KDW |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Warden Wayne C McCabe, Lt Darryl ) | REPORT AND RECOMMENDATION |
| McGhee, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action alleging that Defendants violated his civil rights. This matter is before the court on the Motion for Summary Judgment filed by Defendants on January 18, 2013. ECF No. 27.  As Plaintiff is proceeding pro se, the court entered a *Roseboro*[1]  order on January 22, 2013, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 28.  Plaintiff responded to Defendants' Motion for Summary Judgment on March 1, 2013, and Defendants filed a reply to Plaintiff's response on March 11, 2013, making this motion ripe for consideration.  ECF Nos. 35, 36.  This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Because this motion is dispositive, a Report and Recommendation is entered for the court's review.

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

I.     Background

Plaintiff Jerod J. Cook is an inmate currently incarcerated at Lieber Correctional Institution. ECF No. 1 at 2. Plaintiff filed his Complaint on September 11, 2012 asserting claims for excessive force, cruel and unusual punishment, invasion of privacy and violation of due process. *Id.* at 1. Specifically, Plaintiff contends that on January 24, 2012, he was locked down in his cell because of a riot that happened seven days earlier. *Id.* at 4-5. Plaintiff alleges that his roommate, tired of being on lockdown, began to destroy their cell and to light small pieces of tissue on fire. *Id.* at 5. Plaintiff contends that he tried to throw the "smoldering debris out of the busted window" and a corrections officer sprayed him with chemical munitions. *Id.* Plaintiff contends that he was placed in handcuffs locked behind his back, he was escorted from his cell, taken to an area in front of the cafeteria, and told to "stand there and await the major's arrival." *Id.* at 5-6.     Plaintiff contends that upon the arrival of Defendant Major Theo Nettles, that Defendant Nettles gave the order to strip search Plaintiff, Plaintiff's clothing was removed, he was searched, and his clothing was then put back on. *Id.* at 6. Plaintiff alleges that Defendant Nettles ordered Defendant Lt. Eugene Skipper to again strip Plaintiff and Plaintiff's pants and underwear were taken. *Id.* Defendant Nettles then instructed Defendant Skipper to take Plaintiff to Operations and when Plaintiff asked Defendant Nettles "why he was doing these things to him," Defendant Nettles instructed Defendant Skipper to remove Plaintiff's shoes. *Id.* at 7. Plaintiff contends that Defendant Skipper then squeezed Plaintiff's handcuffs tighter, hurting Plaintiff's wrist and hands, and told Plaintiff to "shut up." *Id.* Plaintiff alleges that he pulled away from the pain and that he was tackled to the ground by several officers which resulted in the "cuffs cut[ting] deeply into his wrists from the weight on his body." *Id.* at 8. Once Plaintiff was on the ground, Defendant Skipper "proceeded to remove the Plaintiff's shoes" and Plaintiff

continued to move his leg "because Defendant Skipper kept trying to lock his hand behind the Plaintiff's knee and apply pressure for no apparent reason." *Id.* Defendant Nettles then instructed Defendant Lt. Darryl McGhee to place "flex cuffs" around Plaintiff's ankles. *Id.* Plaintiff was instructed to walk towards Medical and Operations and when Plaintiff did not walk fast enough, "he was half drug and forced to hop." *Id.* When Plaintiff complained about the pain in his ankles he was told to "shut up." *Id.* at 9. When Plaintiff arrived at Medical a cloth diaper was placed over his genitals, and once in the examination room Plaintiff's "flex cuffs" were removed. *Id.* Upon the conclusion of the examination, Plaintiff's underwear was returned. *Id.* Plaintiff contends that his ankles became badly infected because of the abrasions to his ankles from the use of the "flex cuffs" and he was placed on antibiotics and codeine for pain. *Id.* at 9-10. Plaintiff alleges that he could not walk or stand without pain for approximately one month, and that his pre-existing hip and back problems worsened. *Id.* at 10. Plaintiff argues that he was falsely charged by Defendant Nettles for inciting and creating a disturbance, but this charge was subsequently dismissed. *Id.* at 10. Plaintiff seeks nominal damages in the amount of $125 against each Defendant; compensatory damages in the amount of $8,000 against each Defendant; punitive damages in the amount of $8,000 against each Defendant; a jury trial and costs.

    II.    Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.,* 901

F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. 477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

III.   Analysis[2]

A.  Invasion of Privacy

Plaintiff contends that Defendants violated his Fourth Amendment right to privacy when they failed to provide a reasonable amount of privacy during his strip search, when they conducted the strip search in an unreasonable manner, when they failed to have justification for

---

[2] Defendants assert Plaintiff's failure to exhaust his administrative remedies as a final ground to support a grant of summary judgment. Defendants, however, did not submit any documentation to support this argument. Therefore the undersigned does not address this ground in the Report and Recommendation.

initiating the invasion of privacy at the time it was initiated, and when they initiated the strip search outdoors in the presence of members of the opposite sex. ECF No. 1 at 14. Defendants contend they are entitled to summary judgment on this claim because "legitimate penological interests outweigh the Plaintiff's diminished expectation of privacy in prison," and offer affidavits from Defendants Skipper and Simmons in support of this argument. ECF Nos. 27-1 at 3; 27-2, 27-3. Defendants contend that Plaintiff incited unruly behavior when he destroyed his cell property and, considering that the prison had experienced a riot six days earlier, Plaintiff threatened the safety and order of the prison. ECF No. 27-1 at 4. Defendants further argue that Plaintiff has a history of possessing weapons and that he had possessed a weapon less than two hours before the strip-search. *Id.* Therefore Defendants argue that they had a legitimate compelling reason to search Plaintiff for contraband. *Id.* at 5. Defendants further argue that they did not invade Plaintiff's right to privacy because strip searching Plaintiff in front of a female audience only amounted to inadvertent observation which does not violate the right to privacy. *Id.* at 4-5. Plaintiff concedes that the initial strip search was valid, and instead argues that his complaint concerns "the purposeful removal of his clothing a second time and making Plaintiff shuffle, hop and getting drug the length of a football field in the open, with no cover whatsoever." ECF No. 35 at 11.

The Fourth Circuit addressed the issue of an inmate's right to privacy, clarifying that prisoners retain some degree of privacy that is violated upon "involuntary exposure" to persons of the opposite sex:

> Persons in prison must surrender many rights of privacy which most people may claim in their private homes. Much of the life in prison is communal, and many prisoners must be housed in cells with openings through which they may be seen by guards. Most people, however, have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating. When not reasonably necessary, that

5

sort of degradation is not to be visited upon those confined in our prisons. *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981). Courts within the Fourth Circuit have suggested that in determining whether a certain act violated a prisoner's right to privacy, the court must determine if there was reasonable necessity for the act. *See Pelzer v. McCall*, No. 8:10-cv-914-RMG-JDA, 2011 WL 3021126, at *16 (D.S.C. June 30, 2011), *adopted by* 2011 WL 3021193 (D.S.C. Jul. 22, 2011); *Hickman v. Jackson*, No. 2:03CV363, 2005 WL 1862425, at *7 (E.D.Va. Aug. 3, 2005). In *Pelzer* and *Hickman*, the courts noted that case law suggests "reasonable necessity is intertwined with penological interest: if an inmate's privacy can be maintained without compromising prison operations, then that privacy should be respected." *Id.*

Here, the undersigned finds that penological interests outweighed Plaintiff's privacy rights. The record establishes that there was a riot at Lieber Correctional Institution on January 18, 2012, less than one week prior to the incident in question. Skipper Aff. ¶ 7, ECF No. 27-2. On January 24, 2012, Prison officials conducted a routine search of Plaintiff's cell and "found a five (5) inch knife." Simmons Aff. ¶ 5, ECF No. 27-3. Approximately two hours later, Plaintiff was observed by prison officials "setting his room on fire, breaking his cell window, and destroying his cell toilet." Skipper Aff. ¶ 9. Plaintiff was subsequently removed from his cell and was being escorted to a holding cell "when Major Nettles ordered [Defendant Skipper] to execute a strip-search in front of the cafeteria." *Id.* at ¶ 10. The Court finds that under these conditions, the strip search was reasonable, and Plaintiff has failed to demonstrate a violation of his right to privacy. The court further finds that any observation of the strip search by "members of the opposite sex" was inadvertent and a minimal intrusion on privacy which did not violate Plaintiff's constitutional rights. *See Adams v. Thompson*, C/A No. 3:07–3884–DCN–JRM, 2008 WL 8099780, *4 (D.S.C. Dec.19, 2008), *adopted by* 2009 WL 6891894 (D.S.C. Jan. 13, 2009)

6

(finding that a male inmate's right to privacy is generally not violated by the occasional, inadvertent observation by female guards). Therefore, as to this claim, the undersigned recommends that summary judgment be granted in favor of Defendants.

### B. Excessive Force/Cruel and Unusual Punishment

Plaintiff contends that Defendants used excessive physical force against him and failed to "take alternative measures" available to Defendants instead of using physical force, which was in violation of the Eighth Amendment of the United States Constitution. ECF No. 1 at 12. Defendants argue they are entitled to summary judgment on this claim because Plaintiff failed to allege any serious physical or emotional harm, nor can Plaintiff establish that Defendants acted with a sufficiently culpable state of mind. *Id*. at 7. Defendants contend that Plaintiff was acting aggressively toward prison officials and refusing to be searched or comply with directives and that it took approximately ten prison officials to subdue Plaintiff to execute the search. ECF No. 27-1 at 1. Defendants contend they acted in good faith in an effort to maintain institutional safety and order. ECF No. 27-1 at 8. In response to this argument, Plaintiff contends that he did not pose a threat to the order and safety of the prison. ECF No. 35 at 4. Plaintiff alleges that he was "in restraints, behind his back when the incident occurred that gave rise to this Complaint." *Id.* Plaintiff argues that it is "highly impossible for an inmate with mechanical restraints on, to pose to[o] much of a threat." *Id.*

The Eighth Amendment prohibition of cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To establish a constitutional excessive force claim, the inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious

7

(objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)). Thus, courts must analyze both subjective and objective components.

For the subjective component, Plaintiff must prove that Defendants used force against him "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Whitley*, 475 U.S. at 321. The absence of significant injury alone, however, is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 130 S. Ct. 1175, 1178 (2010). The extent of the injury incurred is one factor indicative of whether the force used was necessary in a particular situation; however, if the force used was applied maliciously and sadistically, liability is not avoided simply because the prisoner "ha[d] the good fortune to escape without serious injury." *Id.* at 1179. As the Court noted in *Wilkins*, the issue is the nature of the force, not the extent of the injury.

The undersigned finds that Plaintiff has not shown that Defendants placed his ankles in "flex cuffs," or took any other action against Plaintiff, for the purposes of causing him injury as opposed to using force in order to subdue Plaintiff so that the Defendants could execute their search. Accordingly, the undersigned recommends that Defendants be granted summary judgment on this claim.

C. Due Process

Plaintiff contends Defendants violated his due process rights when they deprived him of his clothing without a reasonable or logical reason for doing so, thereby "burdening Plaintiff phycologically [sic] by treating him atypical and adding significant hardship." ECF No. 1 at 16. Plaintiff also contends that he was humiliated in front of members of the opposite sex and that he was degraded when the contemporary standards of decency were violated. *Id.* at 17. Defendants contend that they are entitled to summary judgment because they had a rational basis for removing Plaintiff's pants and Plaintiff did not prove that Defendants deprived him of any property. ECF No. 27-1 at 9.

To state a due process claim, an inmate must demonstrate that he was deprived of life, liberty, or property by government action. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)(internal citations omitted). Thus, "challenged prison conditions cannot give rise to a due process violation unless those conditions constitute 'atypical and significant hardship[s] on [inmates] in relation to the ordinary incidents of prison life.'" *McKune v. Lile*, 536 U.S. 24, 37 (2002) (quoting *Sandin*, 515 U.S. at 484). Here, Plaintiff has failed to demonstrate that the Defendants' temporary removal of his clothing to perform a strip search imposed an atypical and significant hardship in relation to the ordinary incidents of prison life. Accordingly, Defendants are entitled to summary judgment on this claim.

D. Eleventh Amendment

To the extent that Plaintiff is suing Defendants in their official capacities, Defendants are entitled to summary judgment. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001).

As Defendants are agents or employees of the State of South Carolina, when acting in their official capacities they are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A State cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663. The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, Defendants are immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants in their official capacities be dismissed.

### E. Qualified Immunity

Defendants contend that Plaintiff's claims against them in their individual capacities should be dismissed because Plaintiff failed to show Defendants violated clearly established constitutional or statutory rights. ECF No. 27-1 at 10. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their

10

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id*. (citations and internal quotation omitted).

The undersigned finds that Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff of which they were aware in the exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that these Defendants be granted qualified immunity.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 27, be granted and that this case be dismissed.

IT IS SO RECOMMENDED.

March 26, 2013                                                    Kaymani D. West
Florence, South Carolina                                   United States Magistrate Judge