IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jerod J. Cook #282755, | ) |
| | ) Civil Action No. 5:12-2608-RMG |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) ORDER |
| Warden Wayne C. McCabe; Lt. Darryl | ) |
| McGhee; Ofc. Lewiston Miller; Ofc. | ) |
| Armot Cole; Ofc. Clarence Mazyck; Lt. | ) |
| Eugene Skipper; Major Theo Nettles, | ) |
| | ) |
| Defendants. | ) |

This matter is before the Court on the Report and Recommendation ("R&R") of the Magistrate Judge recommending this Court grant Defendants' motion for summary judgment. (Dkt. No. 38). For the reasons set forth below, the Court adopts the R&R in part. Accordingly, the Court grants in part and denies in part Defendants' motion for summary judgment. (Dkt. No. 27).

**Background**

Plaintiff, an inmate with the South Carolina Department of Corrections, filed this action pursuant to 42 U.S.C. § 1983 alleging Defendants violated his civil rights. (Dkt. No. 1). In his complaint, Plaintiff asserts claims for excessive force, invasion of privacy, and violation of due process arising from a strip search Defendants performed on him, the alleged removal of his clothes following the strip search, and alleged abuse he suffered while Defendants transferred him to the medical unit following the search. (*Id.*). Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e) DSC, this case was referred to a Magistrate Judge for all pretrial proceedings. On January 18, 2013, Defendants moved for summary judgment. (Dkt. No. 27). On January 22, 2013, the Magistrate Judge issued a *Roseboro* order

1

advising Plaintiff of the importance of responding to the motion. (Dkt. No. 28). Plaintiff subsequently responded to the motion (Dkt. No. 35) and Defendants filed a reply (Dkt. No. 36). The Magistrate Judge then issued an R&R on March 27, 2013, recommending the Court grant Defendants' motion. (Dkt. No. 38). Plaintiff then filed timely objections to the R&R (Dkt. No. 41) and Defendants filed a reply (Dkt. No. 43). Pursuant to the Court's instructions, Defendants then filed a supplemental brief (Dkt. No. 53) and Plaintiff filed a response (Dkt. No. 56).

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a de novo determination of those portions of the R&R to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of

demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

## Law/Analysis

After careful review of the record, the R&R, and Plaintiff's objections, the Court agrees with and adopts the R&R as the order of the Court except for the portion of the R&R ruling on Plaintiff's invasion of privacy claim and Defendants' qualified immunity defense (Sections III.A and III.E). Accordingly, the Court grants Defendants' motion for summary judgment as to all claims except for Plaintiff's claim for invasion of privacy. The Court addresses each of Plaintiff's six objections below.

In his first objection, Plaintiff asserts there was no legitimate penological interest for performing a strip search. (Dkt. No. 41 at 1). However, as noted in the R&R, a riot had occurred at the facility only six days before the search, prison staff found a five-inch knife in Plaintiff's cell only two hours before the search, and only moments before the search Defendants observed that Plaintiff's cell was vandalized and saw Plaintiff throwing burning debris from his cell window. (Dkt. No. 38 at 6). Based on these facts, the Court agrees with the Magistrate Judge that Defendants had a legitimate penological interest, such as prison safety, to perform the search.

3

Plaintiff next objects that he was not responsible for "setting fire to his cell, breaking his cell window and destroying his toilet." (Dkt. No. 41). Plaintiff, however, does claim responsibility for throwing burning debris out of the cell. (Dkt. No. 1 at 5). Furthermore, even if Plaintiff was not directly observed vandalizing the cell himself, Plaintiff does not dispute that a riot occurred at the facility less than a week before and that a knife was discovered in his cell less than two hours before this incident. Therefore, even if Plaintiff was not responsible for the damage to his cell as he argues, Defendants' concerns regarding institutional security were still valid and worthy of the Court's deference.

Plaintiff's third and fourth objections to the R&R concern what occurred immediately after he was strip searched. Plaintiff objects that he was clothed following the strip search, but Defendant Nettles then ordered Defendant Skipper to remove Plaintiff's pants and underwear again. (Dkt. No. 41 at 2). Plaintiff alleges he was then marched for 100 yards, in full view of women security officers and most of the prison population, to the medical unit while naked from the waist down. Indeed, as the Magistrate Judge noted, "Plaintiff concedes that the initial strip search was valid, and instead argues that his complaint concerns 'the purposeful removal of his clothing a second time and making Plaintiff shuffle, hop and getting drug the length of a football field in the open, with no cover whatsoever.'" (Dkt. No. 38 at 5). Plaintiff also challenges that the exposure of his naked body to female officers at this time was not "inadvertent" and that he ever resisted the officers. (Dkt. Nos. 41 at 2; 56). Along with his verified complaint, Plaintiff has submitted three affidavits in support of his allegations. (Dkt. No. 56-1).

Defendants disagree with the Plaintiff's version of events. They assert that Defendant Nettles ordered Defendant Skipper to strip search Plaintiff, but that Skipper was unable to perform the search because Plaintiff resisted by head-butting him. Defendants Miller and Cole

4

then had to subdue Plaintiff and Defendant McGhee placed him in ankle cuffs. Only when Plaintiff was restrained could Skipper then perform the search. After the search, Defendants say six officers took Plaintiff to the medical unit and Plaintiff was wearing his t-shirt and underwear at the time such that his privates were not exposed. Defendants also state only two female officers were present during this incident, Officers Haney and Lopez, and that only Officer Haney observed Plaintiff's privates incident to her role as a training officer. (Dkt. No. 53).

Strip searches do not violate a prisoner's Fourth Amendment right to privacy if the search is reasonable. *Bell v. Wolfish*, 441 U.S. 520, 558-59 (1979). The test of reasonableness requires considering "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 559. Addressing invasion of privacy claims by prisoners, the Fourth Circuit has stated:

> Persons in prison must surrender many rights of privacy which most people may claim in their private homes. Much of the life in prison is communal, and many prisoners must be housed in cells with openings through which they may be seen by guards. Most people, however, have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating. When not reasonably necessary, that sort of degradation is not to be visited upon those confined in our prisons.

*Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981). "In determining whether a certain act violated a prisoner's right to privacy, the court must determine if there was reasonable necessity for the act. . . . [R]easonable necessity is intertwined with penological interest: if an inmate's privacy can be maintained without compromising prison operations, then that privacy should be respected." *Pelzer v. McCall*, No. 8:10-cv-914-RMG-JDA, 2011 WL 3021193, at *9 (D.S.C. July 22, 2011) (internal citations omitted). Further, an inmate's Fourth Amendment "right to privacy [is] not violated by the occasional, inadvertent encounter with female guards." *Thomas v. Shields*, 981 F.2d 1252 (4th Cir. 1992) (table opinion).

Considering the evidence in a light most favorable to Plaintiff, the Court concludes an issue of fact exists as to whether Defendants violated Plaintiff's Fourth Amendment right to privacy. Defendants argue, and Plaintiff concedes, a strip search was valid as reasonably required to ensure prison safety. However, an issue of fact exists as to whether a second strip search was performed, whether Plaintiff was made to walk approximately 100 yards while naked from the waist down, whether and how many female officers and other prisoners observed Plaintiff during the strip search, and whether these actions were reasonably necessary. *See Jones v. Price*, 696 F. Supp. 2d 618, 622-24 (N.D.W. Va. 2010) (finding genuine issue of fact regarding constitutionality of strip search where a prisoner's and officers' affidavits conflicted on material facts).

Defendants have also raised a qualified immunity defense to Plaintiff's claims. In resolving a qualified immunity defense, the Court must (1) determine whether the facts alleged, taken in the light most favorable to the Plaintiff, show that the Defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 231-32, 242 (2009). As discussed above, when considered in a light most favorable to Plaintiff, the facts alleged show Plaintiff was stripped of his clothing a second time in front of female prison staff as well as other prisoners without reasonable necessity. The Court finds these allegations support a claim for violation of Plaintiff's Fourth Amendment right to privacy as expressed in *Lee*. 641 F.2d at 1119.

Having determined, considering the facts in a light most favorable to Plaintiff, that a constitutional violation occurred, the Court must next decide whether the infringed right was "clearly established" at the time of the violation. *Pearson*, 555 U.S. at 230-33 (2009). A right is said to be "clearly established" where it would be "clear to a reasonable officer that the conduct

in which he allegedly engaged was unlawful in the situation he confronted." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004) (internal quotation omitted). The right must be defined "in light of the specific context of the case, not as a broad general proposition." *Id.* The Court finds the right at issue here, a prisoner's right not to be stripped from the waist down in front of several female prison staff members as well as the general prison population in the absence of a legitimate penological interest, was clearly established in January 2012. As stated above, a prisoner's right to prevent his genitalia from being involuntarily exposed to members of the opposite sex when not reasonably necessary has been established in this Circuit since at least 1981. *See Lee*, 641 F.2d at 1119 (4th Cir. 1981). Therefore, the Court finds that Defendants are not entitled to summary judgment on qualified immunity as to Plaintiff's right to privacy claim.

Plaintiff's fifth objection challenges the Magistrate Judge's determination regarding his claim for excessive force by arguing there was no need to use any force because he was already in restraints when the alleged abuse occurred. (Dkt. No. 41 at 2). Plaintiff previously raised this argument (Dkt. No. 35 at 4), and it was thoroughly addressed by the Magistrate Judge in her R&R (Dkt. No. 38 at 7). The Court agrees with the Magistrate Judge that Plaintiff has failed to show that his placement in cuffs, or other action against him, was made for the purpose of causing him injury as opposed to a good faith effort to maintain and restore order. (Dkt. No. 38 at 8) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21); *see also Green v. Byars*, C/A No. 4:11-2473-MGL-TER, 2013 WL 708882, at *5-6 (D.S.C. Jan. 7, 2013) *recommendation adopted by* 2013 WL 707875 (D.S.C. Feb. 26, 2013) (grating summary judgment to prison staff on similar facts).

Plaintiff's final objection is a statement that he is under mental health treatment and desires assistance of counsel in presenting his claim. (Dkt. No. 41 at 2-3). The Court finds this

7

is not a specific objection to the R&R and that it provides no basis for reconsidering any portion of the R&R.

Having addressed Plaintiff's objections de novo, the Court agrees with the Magistrate Judge's remaining unchallenged recommendations. Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's Excessive Force and Due Process claims and Defendants' Eleventh Amendment Immunity defense.

## Conclusion

As set forth above, the Court grants Defendants' motion on all grounds except for Plaintiff's Fourth Amendment invasion of privacy claim. (Dkt. No. 27). Accordingly, the Court dismisses Plaintiff's Excessive Force and Due Process claims. Furthermore, because Plaintiff's invasion of privacy claim involves only Defendants Nettles, Skipper, McGhee, Miller, Mazyck, and Cole, the Court dismisses Defendant McCabe as a defendant in this action. Finally, because Defendants are entitled to Eleventh Amendment Immunity, Defendants Nettles, Skipper, McGhee, Miller, Mazyck, and Cole remain subject to suit only in their personal capacity.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

July 11, 2013
Charleston, South Carolina